**UNITED STATES v. RICHARDSON.**

Cr. No. 1645–51.

United States District Court
District of Columbia.

Jan. 16, 1953.

1. Mastrocola v. Acheson, D.C., 105 F.Supp. 580; Gaudio v. Dulles, D.C., 110 F.Supp. 706.

John P. Witsil, Sp. Asst. to Atty. Gen., for the United States.

George Hayes, Washington, D. C., for defendant.

KIRKLAND, District Judge.

In this particular case, counsel for the defendant, Marie Lucinda Richardson, has filed a motion for a new trial on January 7, 1953, opposed by points and authorities filed by the Government and the Court has had the benefit of extended argument by counsel.

The Court, based upon our local practice, especially the rules as set forth in the Federal Rules of Criminal Procedure and local case law, wherein the Court observes, first, and finds that this particular motion was filed within the two years provided for newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and the local case law, especially Thompson v. United States, 88 U.S.App.D.C. 235, 188 F.2d 652, 653, that with especial regard to local case law and that particular case, the rule locally is as follows:

" 'The trial court has a broad discretion as to whether a new trial should be granted because of newly discovered evidence, and its action will not be disturbed on appeal unless an abuse of that discretion appears.' To obtain a new trial because of newly discovered evidence

"(1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal."

The Trial Court has preserved his trial notes and the Court recalls that this case consumed the days of February 19, 20, 21, 25, 26, 27, and 28, being a total of seven days and that this particular witness, Mary Stalcup Markward, was on the stand three full days.

The Court recalls that she lived at Chesterbrook, Virginia, throughout the period, which was approximately 15 miles to the heart of the city, and that in her activity for the F.B.I., she was a secretary of a local cell of the Communist group that was housed first in the central portions of the city and was afterwards changed to the Stanton Park area at 3rd and H Street, Northeast. The Court points to that fact because of the element of transportation which figured in the means of getting the witness to and from her home daily, to where she served as such secretary, as well as going on to New York City and to Baltimore.

There was, in addition, testimony by her that she paid dues; the amount is not clearly shown, but it is of record that the defendant Marie Lucinda Richardson, although unemployed for a period of time, had to pay 10 cents a week to keep eligible, so it is a fair assumption the dues must have been greater than that.

Her activities extended from the early part of 1943 until 1952, when she was before the Court testifying.

In addition to dues and transportation, there was also evidence before the Court that frequent contributions were made by members; on one occasion, to send this defendant, as the Court recalls, to New York City to attend a school.

A history of the organization locally was that its membership kept diminishing and in

the latter years of its activity, more contributions were made than had been made over the previous years.

Now, before the Court begins to make its findings of fact, the Court wants to notice the exhibit which has been filed to the motion for a new trial. I think it is important to notice, as against the amounts which are listed as having been paid to Mary Stalcup Markward, that in the ten years' time, there is listed but $147 as expenses. Now that, obviously, is not complete. Transportation alone in ten years' driving of an automobile would consume more oil and gas than that, and one doesn't travel to New York and back on the train for fare alone, unless he pays close to $20 to $22, or if he goes to Baltimore, even, or makes a few trips, so it is perfectly apparent that among the other sums of $23,879.45, there must be expenses, expenses apart from the $147 listed.

Now, in paragraph 2 of the exhibit attached to the motion, there is this statement:

"That the prosecution represents that such data which was incorporated in the figures hereinafter set forth accurately state the facts concerning all the payments"—and the Court emphasizes the word "payments"—"up to and including September 10, 1952."

On the second page of the exhibit under the paragraph designated I, down near the bottom and about six lines up from the bottom, there is this statement:

"And that such payments were made for services performed and expenses incurred by such witness in furnishing information to the Federal Bureau of Investigation concerning the Communist Party or its activity or members."

Now, on page 4 of the exhibit under II, there is this quotation:

"In this case up to and including September 10, 1952, the sum set out below after the names of each and for the years indicated, and that such payments were made in connection with witness fees, transportation, per diem, furnishing information, and consultation with respect to testimony in this and other cases involving the Communist Party or its activity or members, or the defendant herein, or some of them."

Now, it is quite important that we observe that witness fees and per diem are included within this sum. The Court will judicially notice in the District of Columbia a witness fee is $4 per day. The Court will note, from the representation of counsel, that this witness was frequently called upon to testify, as the record now shows, not only before the Court in this case in particular; but called upon to testify in administrative proceedings and to testify in other cases, and quite obviously that is a figure of sizeable amount; it is not shown.

The Court's own father was a Deputy United States Marshal for 35 years and the Court knows that transportation is allowed. The Court will judicially notice the transportation allowed is 7 cents a mile, that Baltimore is approximately 35 miles from Washington, New York is 220 miles from Washington, it is approximately 15 miles from Chesterbrook, Virginia, to the District of Columbia alone, and when one stops to multiply daily at least a required 30 to 40 miles a day, even if you eliminated the week-ends of Saturday and Sunday, a hundred days in all, you'd have over 250 days at 40 miles and at 7 cents, you have $2.80 or roughly $3 a day for 250 days, you have $750 multiplied by 10 years, you have $7,500 in the one item of transportation alone.

In addition, there is an allowance of per diem. The Court is uncertain of what that amount is, but with the American dollar in 1952 and a few years before, at approximately 50 cents, with the average breakfast running the average person a dollar and lunch a dollar and a half and dinner at least $2.50, being unacquainted with the number of days involved, one can readily see if you multiply an allowance of $5 or $6 per diem that you are running up a very considerable sum. As the Court recalls, Judges themselves get $10 to $15 per day per diem, so if you expect one human to require $10 to $15 a day to live, certainly a witness would get $5 a day, so that one can readily see that, in the sums involved, how tremendous these figures go.

In addition to all of that, this was the type of case where a witness could not keep the exact amounts that were involved because the revelation of those amounts in her records would immediately disclose the very purpose for which she was working.

Also, the Court finds as a fact that in the trial it was testified in the Government case that she was being paid and there was considerable cross-examination concerning that fact, so the fact of payment was known to the jury.

Now, getting back to the things which are required that a person must do in order to be entitled to obtain a new trial for newly discovered evidence, the first requirement is that the evidence must have been discovered since the trial. With regard to that, the Court finds as a fact that this defendant and her counsel, who are among the very best at our Bar, men of long experience in criminal cases, were acquainted on the first day of her testimony, to wit, the day of February 21, 1952, that she was being paid. That is now found against the movant here; it is found as a fact that the evidence has not been discovered since the trial.

At this point, I shall touch upon the fact that the document which is offered as Exhibit A attached to the motion for a new trial contains so many elements which bear upon witness fees, transportation, per diem charges, contributions, dues, miscellaneous expenses, and where even a casual notice of the listed $147 as expenses is so inadequate as to be on its face demonstrative of the fact that it does not include all of the facts.

Secondly, it is required the party seeking the new trial must show diligence in an attempt to procure the newly discovered evidence. This local case contrasts sharply with the case in New York entitled United States v. Elizabeth Gurley Flynn, apparently Criminal No. 136-7, because the counsel there had put in a subpoena duces tecum on the Government to produce the records which are revealed by the stipulation. Here in the District of Columbia, the central headquarters of the F.B.I. is five blocks from the court house; as a matter of fact, it was six blocks from the Municipal Court Building, Criminal Division, in which this case was being heard and a deputy walking at a casual pace could have reached it in five minutes with a subpoena duces tecum and in less than two hours, to say nothing of the seven days of trial, the information could have been produced in court.

The New York attorney sought those means and caused a subpoena duces tecum to be filed and, as a result, the stipulation was entered. So, accordingly, on the second point, that the party seeking a new trial must show diligence in an attempt to procure the newly discovered evidence, this Court finds as a fact that was not done and diligence has not been shown.

Third, the evidence relied upon must not be merely cumulative or impeaching. From what the Court has said, it is quite obvious that the Court now finds as a fact that this is merely cumulative of what was divulged at the trial, what was argued to the Court, what was argued to the jury; certainly, it is cumulative of what we have already been over and the rule says it must not be merely cumulative or impeaching and it is that.

Fourth, it is required that it be material to the issues involved. If this was a suit for accounting, or an action in debt, or one to determine value or the determination of the amount of money involved under a charge or petit or grand larceny, then it might be material. However, no materiality is shown here.

There was evidence before this jury that this witness did receive money over and above her expenses which might have constituted a salary, might have constituted a wage; whatever the amount is, it is not clear from the record. It appears to be very, very little; if one averages, over the entire 10 years approximately $24,000 paid, or to wit, the exact amount, $23,879.45, it amounts to $45 a week. If one has to spend the large sums indicated by the Court for court attendance, gasoline, per diem, mileage, and the rest, it is obvious that there is no variance from what this lady testified.

The Court notices that what she may have said in another case, be it in New York or an administrative hearing, is not the matter we are concerned with, but rather what did she testify in the open court from the wit-

ness stand and before the jury which sat in judgment and what was represented by her.

The last point is it must be shown that the newly discovered matter is of such a nature that in a new trial it would probably produce an acquittal. The Court finds as a fact that if everything were conceded as represented, that it would not produce an acquittal in this particular case, since it was not a matter of how much the witness got as against the over-all picture of whether or not this defendant, not once, but twice, had said that she had not been or ever had been a member of the Communist Party.

Accordingly, for the reason that the motion has not prevailed either in fact or in law and in the discretion allowed by the Court, the Court will now formally overrule the motion for new trial subject to the objection of the defendant.